## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

JULI RUBIN,

                                        Plaintiff,

v.

JEFFREY A. GROFF,
LAURA GILLIM-ROSS, and
JUSTINE M. PIERCE,

                                        Defendants.

## COMPLAINT

Plaintiff JULI RUBIN, acting through Counsel, NANCY C. JOHNSON, makes the following Complaint:

### The Parties, Jurisdiction And Venue

1.      Plaintiff, JULI RUBIN, is a natural person and a resident of Virginia, with a post office address of 1310 Pendleton St, Alexandria, VA 22314.

2.      Defendant JEFFREY A. GROFF, is Program Manager, Colorado Department of Public Health and Environment, Evidential Breath Alcohol Program, with a principal address of 8100 Lowry BLVD, Denver CO

1

80230-6928.  Said Defendant, at all times complained of herein acted, under color of state law, even when such Defendant's actions were in violation of the Constitution and Laws of the United States and/or the Constitution and Laws of the State of Colorado.   The Claims herein are brought against said Defendant individually and in his official capacity.

3.      Defendant LAURA GILLIM-ROSS, is former Director, Laboratory Services Division, Colorado Department of Public Health and Environment, with a principal address of 5036 S Evanston ST, Aurora CO 80015-2206. Said Defendant, at all times complained of herein acted, under color of state law, even when such Defendant's actions were in violation of the Constitution and Laws of the United States and/or the Constitution and Laws of the State of Colorado.   The Claims herein are brought against said Defendant individually.

4.      RYAN PATRICK DAY, is a Deputy District Attorney in Colorado's 20th Judicial District, with a principal address of 1777 Sixth Street, Boulder, CO 80302.   Said RYAN PATRICK DAY, at all times complained of herein acted, under color of state law, even when such individual's actions were in violation of the Constitution and Laws of the United States and/or the Constitution and Laws of the State of Colorado.  At all times relevant hereto RYAN PATRICK DAY was acting in his capacity as a

2

Deputy District Attorney and is immune from civil damages under *Imbler v. Pachtman*, 424 U.S. 409, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976); however, his participation in the violation of Plaintiff's federally protected rights remains central to this lawsuit.

5.    Defendant JUSTINE M. PIERCE, is a Colorado Assistant Attorney General, with a principal address of 1300 Broadway 6th Floor, Denver CO 80204-2104.  Said Defendant, at all times complained of herein acted, under color of state law, even when such Defendant's actions were in violation of the Constitution and Laws of the United States and/or the Constitution and Laws of the State of Colorado.   The Claims herein are brought against said Defendant individually.

6.    This action is filed to comply with the two year statue of limitations. The lawfulness of Plaintiff's conviction is the subject of an action pursuant to 28 U.S.C. § 2254 in District of Colorado case number 17-cv-00224-MSK, upon which a final determination has not been had at the filing of this action.  The status of that case will necessitate that this action be stayed, or administratively closed, until the conclusion of the § 2254 case.

7.    Jurisdiction is conferred upon this court by 28 U.S.C. § 1331. Venue of this action is proper under 28 U.S.C. § 1391(b).

## GENERAL FACTUAL AVERMENTS

8.    Colorado is a state which conditions operation of a motor vehicle upon the express consent to chemical testing upon an officer having probable cause to believe that a driver has operated a motor vehicle while impaired or under the influence of alcohol or drugs.  See, 42-4-1301.1, COLORADO REVISED STATUTES 2014.

9.    Following *California v. Trombetta*, 467 U.S. 479, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984), the Colorado General Assembly retained the requirement for sample capture on Express Consent chemical tests for defense retesting, specifically requiring that, in order to dispense with such sample retention,

> The department of public health and environment may, by rule, determine that, because of the reliability of the results from certain devices, the collection or preservation of a second sample of a person's blood, saliva, or urine or the collection and preservation of a delayed breath alcohol specimen is not required.

Section 42-4-1301(6)(c), COLORADO REVISED STATUTES 2014.  While the Board of Health made such a finding for certain firmware versions of the Intoxilyzer 5000EN, in 2007, the finding was repealed in 2009 and no such finding has ever been made for the Intoxilyzer 9000.  Notwithstanding the lack of the required regulatory finding and the Intoxilyzer 9000's failure to employ sample capture and retention for retesting, Defendants claim the

4

Intoxilyzer 9000 is a Certified Evidential Breath Alcohol Testing instrument pursuant to 5 C.C.R. 1005-2(2013), §4.1.3.

10.     Prior to the adoption of the 2013 revisions to 5 C.C.R. 1005-2, certification of Colorado Evidential Breath Alcohol Testing devices was done by rule, adopted by the Colorado Board of Health, upon a factual record subject to the Colorado Administrative Procedures Act.

11.     By the adoption of 5 CCR 1005-2 (2013) the Colorado Board Of Health delegated the responsibility and authority for designation of certified breath alcohol testing devices to the Colorado Department of Public Health and Environment. As a prerequisite to determining what devices would be certified as Evidential Breath Alcohol Testing (EBAT) devices, 5 C.C.R. 1005-2 (2013), § 4.1.3.1 required the Colorado Department of Public Health and Environment to establish "scientific standards of performance" for Certification of the EBAT instrument; however, no such standards were established by the Colorado Department of Public Health and Environment prior to the alleged certification of the Intoxilyzer 9000 as a Certified EBAT Instrument in Colorado pursuant to 5 C.C.R. 1005-2 (2013).

12.     Although validation of test protocols which are neither FDA protocols nor modifications of FDA protocols is required by the Colorado Department of Public Health and Environment Laboratory Service Division

5

Quality Assurance Manual, no validation was done of the Intoxilyzer 9000 or any of the testing protocols employed by the Colorado Department of Public Health and Environment in the deployment and use of the Intoxilyzer 9000 in Colorado.

13.     The Intoxilyzer 9000, as deployed in Colorado, has not, and is not, being operated in accordance with the "Quality Assurance Plan" upon which its approval as a "conforming product" under "Model Specifications for Devices to Measure Breath Alcohol" (58 FR 48705) was conditioned.

14.     CMI, the manufacturer of the Intoxilyzer 9000, has withdrawn its User Manual for the Intoxilyzer 9000.    Accordingly, the USDOT conforming product certification is no longer valid, as 49 C.F.R. 40.233(b) makes the Manufacturer's User Manual mandatory.

15.     JEFFREY A. GROFF has alleged that the Colorado Department of Public Health and Environment Evidential Breath Alcohol Testing Program did validate the Intoxilyzer 9000 when it selected it for purchase in early 2012 (and then, in violation of Colorado law[1] and the Colorado Department of Public Health and Environment Laboratory Services Division Quality Assurance Manual, destroyed the records of both the protocol and the

---

[1]     Article 80 of Title 24, COLORADO REVISED STATUTES.   See also, Colorado Department of Public Health and Environment Policy Manual, Part 2.15, Record Retention Policy, Revised April 2012.

6

testing), After its alleged validation, the electrical benches of the Colorado Intoxilyzer 9000s were modified when all of them were returned to CMI in late 2012-early 2013 due to instability and a "mystery bump" (a false alcohol reading showing on the histograms when no alcohol was present). No revalidation was undertaken by JEFFREY A. GROFF  or the Colorado Department of Public Health and Environment Evidential Breath Alcohol Testing Program. While being set-up in April of 2013, test data from some Colorado Intoxilyzer 9000s show that the "mystery bump" remained even after the reworked machines were received back from CMI.

16.    There are substantial differences between the Intoxilyzer 9000 deployed in Colorado and the Intoxilyzer 9000 as subsequently deployed in other states, apparently due to what the Colorado contract identifies as "user configurable options." The Colorado Department of Public Health and Environment has been unable to produce, under the Colorado Open Records Act, any documents which identify the Colorado "user configurable options." The relevant contact language is

> CMI agree (sic) to the Colorado Terms and Conditions and Special Provisions which are a part of this RFP, TM-LSD121208. Further CMI does not foresee any intellectual property that will need to be prepared under the contract and will apply already existing but configurable features and options, both software and hardware in the execution of the contract. CMI recognizes that this particular

7

combination of features and options cannot be used anywhere else without permission from the State of Colorado.

Attachment B-1, RFP TM-LSD121208 to Contract Dated 5/15/2012, Colorado contract Number 12 FAA 43891.

17.    Defendant JEFFREY A. GROFF and the Colorado Department of Public Health and Environment have maintained that the specifications, instructions and quality assurance protocols, if any, developed by CMI for the Intoxilyzer 9000, are not available in Colorado.

18.    By statute directly bearing on the testing for alcohol and drug impairment or intoxication in Colorado, judicial notice is authorized in criminal cases as to certain scientific principles and the design and operation of certain testing devices. Testing instrumentalities must conform to certain standards and a foundation must be laid for the admission of test results.

(c) In all actions, suits, and judicial proceedings in any court of this state concerning alcohol-related or drug-related traffic offenses, the court shall take judicial notice of methods of testing a person's alcohol or drug level and of the design and operation of devices, as certified by the department of public health and environment, for testing a person's blood, breath, saliva, or urine to determine such person's alcohol or drug level. The department of public health and environment may, by rule, determine that, because of the reliability of the results from certain devices, the collection or preservation of a second sample of a person's blood, saliva, or urine or the collection and preservation of a delayed breath alcohol specimen is not required. This paragraph (c) shall not prevent the necessity of establishing during a trial that the

8

testing devices used were working properly and that such testing devices were properly operated. Nothing in this paragraph (c) shall preclude a defendant from offering evidence concerning the accuracy of testing devices.

Section 42-4-1301(6)(c), COLORADO REVISED STATUTES 2014. Neither JEFFREY A. GROFF nor the Colorado Department of Public Health and Environment have been able to produce any authoritative materials from which the judicial notice authorized by Section 42-4-1301(6)(c), COLORADO REVISED STATUTES 2014, can be taken.

19.    The Colorado Department of Public Health and Environment has been unable to produce any documentation showing that it ever established "scientific standards of performance" as required by 5 C.C.R. 1005-2(2013), § 4.1.3.1, in order to certify devices meeting those standards as Certified Evidential Breath Alcohol Testing Instruments for use in Colorado. Accordingly, any certification that the Intoxilyzer 9000 has been certified in accordance with 5 C.C.R. 1005-2(2013) is fraudulent.

20.    COLORADO REVISED STATUTES 2014 provides for the admission of certain records of the Colorado Department of Public Health and Environment by its Executive Director's certification,

> Official records of the department of public health and environment relating to certification of breath test instruments, certification of operators and operator instructors of breath test

9

instruments, certification of standard solutions, and certification of laboratories shall be official records of the state, and copies thereof, attested by the executive director of the department of public health and environment or the director's deputy and accompanied by a certificate bearing the official seal for said department that the executive director or the director's deputy has custody of said records, shall be admissible in all courts of record and shall constitute prima facie proof of the information contained therein. The department seal required under this section may also consist of a rubber stamp producing a facsimile of the seal stamped upon the document.

Section 42-4-1303, COLORADO REVISED STATUTES 2014. The Executive Director of the Colorado Department of Public Health and Environment has, through response to Colorado Open Records Act requests, confirmed that he has never authorized anyone to act as his deputy in signing any such certifications as to the Intoxilyzer 9000.

21.    Although Defendant JEFFREY A. GROFF deployed Intoxilyzer 9000s in Colorado for which he had CMI programmatically generate a report page with each test purporting to be the certification permitted by § 42-4-1303, COLORADO REVISED STATUTES 2014; neither JEFFREY A. GROFF, nor the Colorado Department of Public Health and Environment Evidential Breath Alcohol Testing Program was authorized to issue such certificates. Those false certifications were designed to be accepted by Colorado courts as the § 42-4-1303, COLORADO REVISED STATUTES, certification, and to convince courts that they were prima facia proof of the facts set forth therein.

22.    From the time that Defendant Laura Gillim-Ross assumed the role of Director of the Laboratory Services Division of the Colorado Department of Public Health and Environment in June of 2013, she became legally responsible for all reported test results of the Evidential Breath Alcohol Testing Program.

> 2.5.1. Laboratory Services Division Director
> 2.5.1.1. Responsibilities: The Laboratory Services Division (LSD) Director is legally responsible for the quality of results produced in the laboratory and reported to clients. The LSD Director is the appointing authority as defined in the State of Colorado Statutes and Rules as assigned by the Executive Director of the Department.
> 2.5.1.2. Duties: Sets standards and policies for quality. Appoints a Quality Assurance Officer. Forms a QA Committee comprised of representative staff from each laboratory area involved in the pre-analytic, analytical, and post-analytic processes. Approves the hiring and promotion of qualified staff. Gives final divisional approval for Standard Operating Procedures (SOPs). Assures that LSD staff complies with state statutes and rules concerning confidentiality and proprietary rights. NOTE: The CLIA Lab Director has the responsibility of LSD Director for those lab programs certified under CLIA.

QUALITY ASSURANCE MANUAL, Laboratory Services Division, Colorado Department of Public Health and Environment, December 2012, § 2.5.1.

23.    On or about June 27, 2013, shortly after Defendant Laura Gillim-Ross assumed the position of Director of the Laboratory Services Division of the Colorado Department of Public Health and Environment,

11

Defendant Laura Gillim-Ross became aware that Defendant JEFFREY A. GROFF had been falsely certifying laboratories under 5 C.C.R. 1005-2(2009) as meeting the requirements of Colorado law and that he was about to carry on this practice under 5 C.C.R. 1005-2(2013) as meeting the requirements of Colorado law. The Rule described the scope of the certifications as,

> This rule establishes minimum standards for certification and approval of entities and processes used for alcohol and drug testing. This rule is applicable to: samples taken from subjects driving under the influence, driving while impaired, driving with excessive alcohol content; vehicular assaults and vehicular homicides involving an operator while under the influence of alcohol or one or more drugs or both; the testing of samples of blood or other bodily substances from the bodies of pilots in command, motorboat or sailboat operators in command, or drivers and pedestrians suspected of being impaired by alcohol and/or drugs who die within four hours after involvement in a crash involving a motor vehicle, a motorboat, a sailboat or an aircraft; and consumption of alcohol by underage persons and records related thereto.

5 C.C.R. 1005-2(2013), § 1.1.

24.   When a July 1, 2013, Laboratory Certification was challenged in Denver District Court under § 24-4-106, COLORADO REVISED STATUTES 2013, the State of Colorado, along with Defendants GROFF and GILLIM-ROSS, obtained a final judicial determination that there was no case and controversy because certifications under 5 C.C.R. 1005-2 (2013) had no

effect on the requirements to lay an evidentiary foundation for test results in

Colorado.

Further, Plaintiffs have failed to demonstrate the prosecution's use of this "false evidentiary inference" to procure a conviction against them in their underlying criminal cases. No trial has been had wherein Plaintiffs' blood test results have been offered as evidence against them. Rather, the record before the Court confirms that as of the date of entry of this Order, Plaintiff Toby Romero has entered a not guilty plea with respect to his charges, while Plaintiff Catherine Boyd has yet to enter any plea to the charges pending against her. As such, Plaintiffs have suffered no "false evidentiary inference" at this time. Likewise, Plaintiffs' claim that this "false evidentiary inference" will apply at trial of their underlying criminal cases is merely hypothetical, as the prosecution may opt to proceed without introducing any lab test results in the Plaintiffs' respective trials. **Further, Plaintiffs' position fails to consider the trial court's role as the gate keeper of the evidence, as issues concerning the veracity of Plaintiffs' blood tests can be properly raised as evidentiary concerns with the trial court in their underlying criminal proceedings.** Thus, Plaintiffs' general contentions that they "face the inferences created by the claimed false certification and are incurring and will incur damages as a result" are unavailing.

Accordingly, because the alleged "false evidentiary inferences" may or may not be introduced against them as evidence in their underlying criminal proceedings, Plaintiffs' claims are too attenuated and speculative to establish an injury-in-fact sufficient to afford standing to Plaintiffs here. See *Opie*, 701 P.2d at 874.

*Romero v. Groff*, Denver District Court case number 13 CV 33447, Order of

December 10, 2013.

13

25.    Having blocked review of fraudulent certificates issued by the Colorado Department of Public Health and Environment on the grounds that no review need exist under § 24-4-106, COLORADO REVISED STATUTES, because certifications under 5 C.C.R. 1005-2 (2013) were subject to evidentiary challenge in the criminal proceedings in which they were sought to be introduced, Defendants GROFF and GILLIM-ROSS proceeded to issue certificates in the name of the Colorado Department of Public Health and Environment which were false and purported to certify compliance with 5 C.C.R. 1005-2(2013) for the purpose of introducing false evidence into criminal cases.

26.    The fraud by the Colorado Department of Public Health and Environment Evidential Breath Alcohol Testing Program has been willful and recurrent since the acquisition of the Intoxilyzer 9000 in 2012 and its deployment throughout Colorado in 2013

27.    The Colorado Department of Public Health and Environment, in response to formal requests under the Colorado Open Records Act has been unable to produce any delegation of authority to the Evidential Breath Alcohol Testing Program or JEFFREY A. GROFF as the Program Manager of the Evidential Breath Alcohol Testing Program, to act for the Department or

14

the Director of the Laboratory Services Division Director with respect to the certification of Breath Alcohol testing devices.

28.    Defendant JEFFREY A. GROFF , with the acquiescence and cooperation of Defendant Laura Gillim-Ross Defendant through the implementation of the Intoxilyzer 9000 by the Colorado Department of Public Health and Environment Evidential Breath Alcohol Testing Program which operated under his direction, produced certificates bearing the signature of Laura Gillim-Ross intending they be taken as issued pursuant to § 42-4-1303, COLORADO REVISED STATUTES 2014, despite the fact that he had no authority to issue such certificates.

29.    On February 7, 2015, Plaintiff was subjected to arrest by a University of Colorado Police Officer who invoked Colorado's Express Consent statute upon a claim that he had probable cause to arrest her for an alcohol related driving offense.  Upon his representation that the Intoxilyzer 9000 was a "certified Evidential Breath Alcohol Testing device" under Colorado law, Plaintiff submitted to testing on Intoxilyzer 9000, serial number 90-000367, which produced a certificate purporting to bear the signature of Defendant LAURA GILLIM-ROSS and stating:

> Pursuant to the Colorado Board of Health Rules Pertaining To The Testing Of Alcohol And Other Drugs (5-CCR l005-2), The CDPHE certifies and approves the use of the listed Intoxilyzer

9000 (1-9000) to perform Evidential Breath Alcohol Testing (EBAT) for the purpose of determining alcohol content.

The histogram associated with the first of the two blows, showed an alcohol presence in the test chamber of in excess of 0.075 g/210 l of breath at time marker zero, when the alcohol value should have been zero.

30.    Because the Intoxilyzer 9000 was placed into service by Defendant JEFFREY A. GROFF  and the Colorado Department of Public Health and Environment Evidential Breath Alcohol Testing Program without sample capture, despite the absence of the Board of health finding required by § 42-4-1301(6)(c), COLORADO REVISED STATUTES 2012, for use of an Evidential Breath Alcohol Testing instrument without sample capture, no forensic retesting was available to Plaintiff to challenge the Intoxilyzer 9000 result.

31.    On December 3, 2015, based on correspondence with Defendant Justine Pierce urging the prosecution to move to prevent witnesses from being called to question the validity of testing with the Intoxilyzer 9000 and the fraudulent certifications by Gillim-Ross and Groff, Deputy District Attorney RYAN PATRICK DAY filed a motion in limine to preclude any defense attack on the test result.  Mr. Day's Motion in Limine falsely advised the Boulder County County Court:

16

   A. The general reliability of the 19000 is not subject to challenge in a DUI proceeding. (Motion in Limine, p. 3)

   B. With respect to the reliability of the I9000, the CDPHE has for several years had protocols and procedures in place defining the appropriate way to administer an EBA T on the 19000. See 5 CCR 1005-2 § 1.5 (2013). The protocols and procedures, if followed, ensure that the resulting EBAT is reliable. (Motion in Limine, ¶ 10)

   C. There is no dispute that the CDPHE determined that the 19000 is a scientifically reliable method for testing the alcohol content of a person's breath. (Motion in Limine, ¶. 13)

32.   On December 8, 2015, Deputy District Attorney RYAN PATRICK DAY, acting at the request of Defendant JUSTINE PIERCE, who was acting for herself and Defendants GROFF and GILLIM-ROSS, prevailed upon the Boulder County County Court to deprive Juli Rubin of her right to present a defense under the Sixth Amendment and her right to due process of law under the Fifth and Fourteenth Amendments, by preventing her from presenting a defense and permitting the prosecution to present false and fraudulent evidence to the jury, resulting in her conviction on the alcohol related

17

charges by jury verdict on December 9, 2015.  Under *Brady,* the actions to

suppress this evidence were a violation of clearly established law.

> We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates \*\*1197 due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.

*Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196–97, 10 L. Ed. 2d

215 (1963).  Likewise, the use of false testimony or evidence was clearly

established as a due process violation.

> First, it is established that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment, *Mooney v. Holohan,* 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791; *Pyle v. State of Kansas*, 317 U.S. 213, 63 S.Ct. 177, 87 L.Ed. 214; Curran v. State of Delaware, 3 Cir., 259 F.2d 707. See *State of New York ex rel. Whitman v. Wilson,* 318 U.S. 688, 63 S.Ct. 840, 87 L.Ed. 1083, and *White v. Ragen*, 324 U.S. 760, 65 S.Ct. 978, 89 L.Ed. 1348. Compare *Jones v. Commonwealth of Kentucky*, 6 Cir., 97 F.2d 335, 338, with *In re Sawyer's Petition*, 7 Cir., 229 F.2d 805, 809. Cf. *Mesarosh v. United States*, 352 U.S. 1, 77 S.Ct. 1, 1 L.Ed.2d 1. The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears. *Alcorta v. State of Texas*, 355 U.S. 28, 78 S.Ct. 103, 2 L.Ed.2d 9; *United States ex rel. Thompson v. Dye*, 3 Cir., 221 F.2d 763; *United States ex rel. Almeida v. Baldi*, 3 Cir., 195 F.2d 815, 33 A.L.R.2d 1407; *United States ex rel. Montgomery v. Ragen,* D.C., 86 F.Supp. 382. See generally annotation, 2 L.Ed.2d 1575.

*Napue v. People of State of Ill.*, 360 U.S. 264, 269, 79 S. Ct. 1173, 1177, 3

L. Ed. 2d 1217 (1959)

18

## FIRST CLAIM FOR RELIEF
## 42 U.S.C. § 1983

33.    Plaintiff incorporates the preceding averments of this Complaint into this Claim for Relief as if set forth fully herein.

34.    The actions of Defendants Groff, Gillim-Ross and Justine Pierce, while designed to protect the fraudulent certifications by the Colorado Department of Public Health and Environment Evidential Breath Alcohol Testing Program, were directed to and had the foreseeable result of denying Plaintiff JULI RUBIN both her Sixth Amendment right to present a defense to the criminal charges brought against her in Boulder County County Court case number 2015-T-000327 and her right to due process of law under the Fifth and Fourteenth Amendments to the Constitution of the Untied States by the prosecution's reliance upon false testimony to obtain a conviction.

35.    Plaintiff suffered economic loss in the costs of defense of the criminal action associated with the denial of those rights, as well as the associated emotional distress resulting from a trial in which she could not present a defense and dealing with a wrongful conviction.    Plaintiff is entitled to damages pursuant to 42 U.S.C. § 1983, including punitive damages, against each defendant, to include her costs and attorney fees under 42 U.S.C. § 1988.

Wherefore, Plaintiff prays for judgment for damages, to be determined by the finder of fact, against Defendants JEFFREY A. GROFF , LAURA GILLIM-ROSS and JUSTINE M. PIERCE, to include punitive damages, as well as her costs and attorney fees.

Plaintiff demands Trial by Jury as to all issues so determinable.

Respectfully submitted:

/s/ Nancy C. Johnson
Nancy C. Johnson
P.O. Box 17057
Golden CO 80402
Phone number: 303-231-9343
E-Mail: ncjonson@earthlink.net

Attorney for JULI RUBIN